**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUDY RADUSEWICZ,<br>on behalf of plaintiff and a class,<br><br>Plaintiff,<br><br>vs.<br><br>ADVENTURES NORTHWEST, INC.,<br>doing business as EVENTS AND<br>ADVENTURES,<br><br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

1. Plaintiff brings this action to secure redress for violations of the Electronic Funds Transfer Act, the Truth in Lending Act, and state law by defendant.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under the Electronic Funds Transfer Act, 15 U.S.C. §1693m ("EFTA"), the Truth in Lending Act, 15 U.S.C. §1640 ("TILA"), 28 U.S.C. §1331 (general federal question), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).

3. Venue in this District is proper because a material part of the events at issue occurred here.

## PARTIES

4. Plaintiff is an individual who resides in Oak Forest, Illinois.

5. Defendant Adventures Northwest, Inc., doing business as Events & Adventures,

is a corporation chartered under the law of the state of Washington. It does business in Illinois and has offices at 180 N. Stetson, Suite 3500, Chicago, Illinois 60601. Its registered agent and office is Incorp Services, 901 S. 2d Street, Suite 201, Springfield, IL 62704.

6. Defendant operates a dating club.

**FACTS**

7. On April 4, 2015, plaintiff signed a membership agreement with defendant, attached as Exhibit A.

8. Exhibit A is a printed form, regularly used by defendant and regularly filled out in the same manner as was done with plaintiff.

9. Plaintiff agreed to pay an "initiation amount" of $2,495, made an initial payment of $500, and agreed to pay $141.25 for 12 months. Plaintiff also agreed to pay monthly dues of $30 per month for 12 months.

10. Since the obligation created by Exhibit A was repayable in more than 4 installments, it was an extension of credit subject to TILA.

11. On information and belief, defendant enters into contracts payable in more than 4 installments more than 26 times per year, and thus is a creditor subject to TILA. Defendant states on its web site (http://www.eventsandadventures.com/) that it has "40,000 members meeting in 9 cities". The amounts charged by defendant are substantial and likely to be paid in installments. If the contracts are for not more than two years (the maximum term on Exhibit A), defendant is highly likely to enter into more than 26 contracts per year.

12. No Truth in Lending disclosures were provided by defendant.

13. Plaintiff provided a debit authorization as the means of payment.

14. Exhibit A provides, under "Dues/ Membership" and "Electronic Funds Transfer Cancellation," that "You hereby authorize Events & Adventures to effect payment for your monthly dues and/or membership by drafting your bank account or credit card account indicated below once every month through the electronic funds transfer system," that cancellation of such authorization requires 30 days notice by certified mail, and that "In such event, your membership privileges shall terminate immediately or at any future date specified in any notice."

15. Exhibit A provides that defendant "may adjust the amount of your Monthly Dues, upon sixty (60) days' written notice to you," without limitation, and that the "initiation amount" ($2,195 in plaintiff's case) is for "costs spent to offer you an E&A Membership and to pay E&A for services already delivered to you."

16. Plaintiff decided that defendant's services were too expensive and gave notice of cancellation April 6, 2015. (Exhibit B)

17. Defendant had already debited plaintiff's account for the $500.

18. After receiving notice of plaintiff's cancellation, defendant debited plaintiff's account for the first installment of $141.25 plus the first monthly dues of $30.

19. Defendant refused to honor plaintiff's cancellation (Exhibit C)

**COUNT I – ELECTRONIC FUNDS TRANSFER ACT – CLASS CLAIM**

20. Plaintiff incorporates paragraphs 1-19.

21. The authorization to debit plaintiff's bank account is an electronic funds transfer under 15 U.S.C. §1693a(6), which defines electronic funds transfer as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to

order, instruct, or authorize a financial institution to debit or credit an account. . . .”

22. The authorization to debit plaintiff’s account is also a "preauthorized electronic fund transfer" under 15 U.S.C. §1693a(9), which defines preauthorized electronic funds transfer as “an electronic fund transfer authorized in advance to recur at substantially regular intervals.”

23. 15 U.S.C. §1693k, “Compulsory use of electronic fund transfers,” provides that “No person may– (1) condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers . . . “

24. By providing that membership shall cease upon cancellation of the debit authorization, defendant improperly conditioned the extension of credit on repayment by means of electronic fund transfers.

25. Defendant thereby violated the EFTA.

26. 15 U.S.C. §1693m provides:

> **§ 1693m. Civil liability**
>
> **(a) Individual or class action for damages; amount of award. Except as otherwise provided by this section and section 910 [*15 USCS § 1693h*], any person who fails to comply with any provision of this *title [15 USCS §§ 1693* et seq.] with respect to any consumer, except for an error resolved in accordance with section 908 [*15 USCS § 1693f*], is liable to such consumer in an amount equal to the sum of–**
>
> > **(1) any actual damage sustained by such consumer as a result of such failure;**
> >
> > **(2) (A) in the case of an individual action, an amount not less than $ 100 nor greater than $ 1,000; or**
> >
> > > **(B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the**

**same person shall not be more than the lesser of $ 500,000 or 1 per centum of the net worth of the defendant; and**

**(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.**

**(b) Factors determining amount of award. In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors–**

**(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional; or**

**(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance, the nature of such noncompliance, the resources of the defendant, the number of persons adversely affected, and the extent to which the noncompliance was intentional. . . .**

**(g) Jurisdiction of courts; time for maintenance of action. Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.**

## CLASS ALLEGATIONS

27. Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

28. The class consists of (a) all individuals (b) who entered into agreements with defendant in which their “initiation amount” was repayable in more than 4 installments, (c) in which repayment was to be made by recurring debit of a bank account (d) which agreements were entered into on or after a date 1 year prior to the filing of this action and on or before a date 21 days after the filing of this action (e) and which contained the language set forth in paragraph 14.

29. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the numbers advertised by defendants, there are at least 40 members of the class.

30. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendant violates the EFTA by providing for cancellation of membership if the debit authorization is cancelled.

31. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

32. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

33. A class action is superior for the fair and efficient adjudication of this matter, in that:

(1) Individual actions are not economically feasible;

(2) Members of the class are likely to be unaware of their rights;

(3) Congress intended class actions to be the principal enforcement mechanism under the EFTA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

(a) Statutory damages;

(b) Actual damages;

(c) Attorney's fees, litigation expenses and costs of suit;

(d) Such other and further relief as the Court deems proper.

**COUNT II – TRUTH IN LENDING ACT – CLASS CLAIM**

34. Plaintiff incorporates paragraphs 1-19.

35. Defendant violated 15 U.S.C. §1638 and 12 C.F.R. §1026.18 by extending closed-end credit without making any disclosures.

**CLASS ALLEGATIONS**

36. Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

37. The class consists of (a) all individuals (b) who entered into agreements with defendant in which their "initiation amount" was repayable in more than 4 installments, (c) which agreements were entered into on or after a date 1 year prior to the filing of this action and on or before a date 21 days after the filing of this action.

38. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the numbers advertised by defendants, there are at least 40 members of the class.

39. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendant violates TILA by not providing disclosures.

40. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

41. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

42. A class action is superior for the fair and efficient adjudication of this matter, in that:

(1) Individual actions are not economically feasible;

(2) Members of the class are likely to be unaware of their rights;

(3) Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

(a) Statutory damages;

(b) Attorney's fees, litigation expenses and costs of suit;

(c) Such other and further relief as the Court deems proper.

**COUNT III – BREACH OF CONTRACT – INDIVIDUAL CLAIM**

43. Plaintiff incorporates paragraphs 1-19.

44. Exhibit A provides by its terms that it may be cancelled if notice is sent by certified mail within 3 business days.

45. Plaintiff gave such notice.

46. Defendant refused to cancel the contract and instead took plaintiff's money.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant:

(a) Declaring Exhibit A to have been cancelled;

(b) For the $671.25;

(c) For costs of suit;

(d) For such other and further relief as the Court deems proper.

**COUNT IV – DATING REFERRAL SERVICES ACT – INDIVIDUAL CLAIM**

47. Plaintiff incorporates paragraphs 1-19.

48. Defendant is a "dating services enterprise" as defined in 815 ILCS 615/5, in that it offers "dating referral services" to the public for compensation.

49. Defendant's services are "dating referral services" as defined in 815 ILCS 615/5, in that they are " primarily intended to introduce or match adult persons for social or romantic encounters, or members in any group formed by a dating referral enterprise for any of the above purposes . . . ."

50. 815 ILCS 615/20, "Cancellation and refund requirements," provides:

> **(a) Every contract for dating referral services shall provide the following:**
>
> > **(1) That the contract may be cancelled by the customer within 3 business days after the first business day after the contract is signed by the customer, and that all monies paid under the contract shall be refunded to the customer. For the purposes of this Section, "business day" means any day on which the facility is open for business. . . . The customer's rights to cancel described in this Section are in addition to any other contract rights or remedies provided by law.**
>
> **(b) Every contract for dating referral services shall provide that notice of cancellation under subsection (a) of this Section shall be made in writing and delivered by certified or registered mail to the enterprise at the address specified in the contract. All refunds to which a customer or his or her estate is entitled shall be made within 30 days of receipt by the enterprise of the cancellation notice.**

51. Plaintiff cancelled Exhibit A but was not provided a refund within 30 days.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant:

(a) Declaring Exhibit A to have been cancelled;

(b) For $2,013.75;

(c) For attorney's fees, litigation expenses and costs of suit;

(d) For such other and further relief as the Court deems proper.

**COUNT V – DATING REFERRAL SERVICES ACT – CLASS CLAIM**

52. Plaintiff incorporates paragraphs 1-19.

53. Defendant is a "dating services enterprise" as defined in 815 ILCS 615/5, in that it offers "dating referral services" to the public for compensation.

54. Defendant's services are "dating referral services" as defined in 815 ILCS 615/5, in that they are " primarily intended to introduce or match adult persons for social or romantic encounters, or members in any group formed by a dating referral enterprise for any of the above purposes . . . ."

55. 815 ILCS 615/30 provides:

> **§ 30. Prohibited contract provisions. (a) No contract for dating referral services shall require payments or financing over a period in excess of 3 years from the date the contract is entered into, nor shall the term of any contract be measured by the life of the customer. The initial term of services to be rendered under the contract may not extend over a period of more than 2 years from the date the parties enter into the contract, provided that the customer may be given an option to renew the contract for consecutive periods of not more than one year each for a reasonable consideration not less than 10% of the cash price of the original membership. . . .**

56. The right of defendant to increase dues on 60 days notice, without limitation, makes its contract one for a term of 60 days, renewable for similar periods.

57. The structure of defendant's contract, providing for a substantial "initiation fee" and monthly dues that can be increased on 60 days' notice, violates 815 ILCS 615/30. Section

30 "restricts the power of [dating services enterprises] to tie members to long-term contracts. If the original membership price pays for many subsequent renewal periods, the contract effectively ties the member to a prohibited long-term contract. The requirement that a renewal must cost more than one-tenth of the cost of the initial period assures that the member has a significant cancellation option at the end of each renewal period." *Pulcini v. Bally Total Fitness Corp*.,, 353 Ill.App.3d 712, 820 N.E.2d 31 (1st Dist. 2004) (addressing identical provisions of Physical Fitness Services Act).

58. 815 ILCS 615/35 provides:

> **(b) Any waiver by the customer of the provisions of this Act shall be void and unenforceable.**
>
> **(c) Any contract for dating referral services which does not comply with the applicable provisions of this Act shall be void and unenforceable. . . .**

59. All contracts in the form represented by Exhibit A with Illinois residents are void and unenforceable.

## CLASS ALLEGATIONS

60. Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

61. The class consists of (a) all individuals with Illinois addresses (b) who entered into agreements with defendant in the form represented by Exhibit A (c) which agreements were entered into on or after a date 5 years prior to the filing of this action.

62. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the numbers advertised by defendants, there are at least 40 members of the class.

63. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendant's contract structure violates Illinois law.

64. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

65. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

66. A class action is superior for the fair and efficient adjudication of this matter, in that:

(1) Individual actions are not economically feasible;

(2) Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

(a) A declaration that contracts in the form of Exhibit A are void and unenforceable;

(b) Damages equal to three times the amount paid.

(c) Attorney's fees, litigation expenses and costs of suit;

(d) Such other and further relief as the Court deems proper.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner

Emiliya Gumin Farbstein
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/ Daniel A. Edelman
Daniel A. Edelman